**FILED**
CLERK, U.S. DISTRICT COURT

12/01/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

**UNDER SEAL**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>         v.<br><br>JOHN GOLDBERG and<br>RANDALL SCOTT BOLL,<br><br>         Defendants. | No. 8:21-cr-00214-DOC<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1956(h): Conspiracy to Launder Money; 18 U.S.C. § 1957: Money Laundering; 18 U.S.C. § 371: Conspiracy to Cause a Financial Institution to Fail to File Currency Transaction Reports and to Structure Financial Transactions; 18 U.S.C. §§ 1960(a), (b)(1)(C): Operating an Unlicensed Money Transmitting Business; 18 U.S.C. § 982(a)(1), 31 U.S.C. § 5317(c)(1): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1956(h)]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

    1.   Beginning in or about January 2017, and continuing to in or about February 2019, in Orange County, within the Central District of

1    California, and elsewhere, defendants RANDALL BOLL and JOHN GOLDBERG,

2    and others known and unknown to the Grand Jury, conspired and agreed

3    with each other to knowingly and willfully conduct, and attempt to

4    conduct, financial transactions, knowing that property involved in

5    the financial transactions represented the proceeds of some form of

6    unlawful activity, and which property was, in fact, the proceeds of

7    specified unlawful activity, that is, the unlawful distribution of

8    controlled substances, in violation of Title 21, United States Code,

9    Section 841(a)(1), with the intent and knowing that the transactions

10   were designed in whole and in part to conceal and disguise the

11   nature, the location, the source, the ownership, and the control of

12   the proceeds of said specified unlawful activity, in violation of

13   Title 18, United States Code, Section 1956(a)(1)(B)(i).

14   B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

15        ACCOMPLISHED

16        The objects of the conspiracy were to be accomplished, in

17   substance, as follows:

18        1.   Co-conspirator #1 and others in Southern California would

19   supply controlled substances, including marijuana and

20   methamphetamine, to Co-conspirator #2, Co-conspirator #3, and other

21   drug distributors, for further distribution at locations in the

22   United States, including Ohio and Pennsylvania.

23        2.   Defendants GOLDBERG and BOLL would provide bank accounts

24   that they controlled, but which were held in the names of various

25   nominees, to Co-conspirator #1 and other drug distributors for

26   depositing cash proceeds from the sale of controlled substances.

27        3.   To avoid the filing of a currency transaction report, which

28   banks must file with the federal government by law when a customer

2

deposits more than $10,000 in cash, defendants GOLDBERG and BOLL would instruct Co-conspirator #1 and other drug distributors to structure the deposits, that is, cause the cash deposits to be made in incremental amounts of $10,000 or less at different banks and bank branches, or on different days at the same bank, or at different times on the same day at the same bank.

4.   To avoid the filing of a currency transaction report, defendants GOLDBERG and BOLL would also advise Co-conspirator #1 and other drug distributors to obtain checks or money orders with cash drug proceeds, and then deposit the checks or money orders into bank accounts controlled by defendants GOLDBERG and BOLL.

5.   To pay for the drugs they received, Co-conspirators #2 and #3 would deposit, in structured amounts, the cash proceeds obtained from drug distribution into the bank accounts controlled by defendants GOLDBERG and BOLL.

6.   After charging a percentage of each transaction as a service fee, defendants GOLDBERG and BOLL would forward the equivalent amount of the drug proceeds to Co-conspirator #1 and other drug suppliers, either in cash or via transfer to bank accounts controlled by Co-conspirator #1 and other drug suppliers.

7.   Defendants GOLDBERG and BOLL would pay part of the service fee to the nominees of the bank accounts, and retain part of the service fee for themselves.

8.   Co-conspirator #1 and other drug suppliers would use the drug proceeds to pay for the drugs they had received, and to purchase more controlled substances for distribution.

C.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants BOLL and GOLDBERG, and others known and unknown to the Grand Jury, including Co-conspirators #1, #2, and #3, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Service Fees for Structured Deposits of Cash

Overt Act Nos. 1 through 18: On or about the dates set forth below, defendant GOLDBERG charged Co-conspirator #1 a service fee for each deposit of a structured amount of cash into bank accounts controlled by GOLDBERG, as identified below:

| Overt Act | Date | Bank Account Ending in Numbers | Cash Amount Deposited |
|---|---|---|---|
| 1 | 1/27/17 | Bank of America ("BofA") x7225 | $8,000 |
| 2 | 1/27/17 | Wells Fargo Bank ("WFB") x0808 | $8,000 |
| 3 | 1/31/17 | WFB x0808 | $8,000 |
| 4 | 1/31/17 | WFB x8078 | $7,000 |
| 5 | 2/8/17 | WFB x0808 | $8,000 |
| 6 | 2/8/17 | WFB x8078 | $8,000 |
| 7 | 4/3/17 | BofA x7225 | $9,000 |
| 8 | 4/3/17 | BofA x6591 | $4,500 |
| 9 | 4/21/17 | BofA x7225 | $9,000 |
| 10 | 4/21/17 | BofA x6591 | $9,000 |
| 11 | 5/16/17 | BofA x7225 | $8,500 |
| 12 | 5/16/17 | BofA x6591 | $7,500 |
| 13 | 5/23/17 | BofA x7225 | $9,000 |
| 14 | 5/23/17 | BofA x6591 | $8,000 |
| 15 | 5/25/17 | BofA x7225 | $9,000 |
| 16 | 5/25/17 | BofA x6591 | $8,000 |
| 17 | 5/30/17 | BofA x7225 | $8,000 |
| 18 | 5/30/17 | BofA x6591 | $8,000 |

<u>Overt Act Nos. 19 through 45</u>:  On or about the dates set forth below, defendant BOLL charged Co-conspirator #1 a service fee for each deposit of a structured amount of cash into bank accounts controlled by BOLL, as identified below:

| Overt Act | Date | Bank Account Ending in Numbers | Cash Amount Deposited |
|---|---|---|---|
| 19 | 4/7/17 | Well Fargo Bank ("WFB") x9326 | $6,000 |
| 20 | 4/7/17 | WFB x9334 | $7,800 |
| 21 | 4/14/17 | WFB x9391 | $8,160 |
| 22 | 4/14/17 | WFB x9391 | $7,840 |
| 23 | 4/14/17 | PNC x0137 | $7,730 |
| 24 | 4/28/17 | WFB x9326 | $8,300 |
| 25 | 4/28/17 | WFB x9334 | $8,700 |
| 26 | 5/12/17 | WFB x9391 | $8,000 |
| 27 | 5/12/17 | WFB x6862 | $8,000 |
| 28 | 5/12/17 | PNC x0137 | $7,500 |
| 29 | 6/2/17 | WFB x9334 | $8,500 |
| 30 | 6/2/17 | WFB x9391 | $8,000 |
| 31 | 6/12/17 | WFB x9342 | $8,000 |
| 32 | 6/12/17 | WFB x9391 | $9,000 |
| 33 | 6/12/17 | PNC x0137 | $8,000 |
| 34 | 6/12/17 | WFB x8181 | $6,000 |
| 35 | 6/22/17 | WFB x9342 | $8,000 |
| 36 | 6/22/17 | PNC x0137 | $8,000 |
| 37 | 7/11/17 | PNC x0137 | $8,000 |
| 38 | 7/11/17 | PNC x0137 | $8,000 |
| 39 | 7/13/17 | WFB x9391 | $8,000 |
| 40 | 7/13/17 | WFB x8181 | $7,000 |
| 41 | 7/18/17 | WFB x9391 | $8,000 |
| 42 | 7/18/17 | WFB x8181 | $7,000 |
| 43 | 8/22/17 | BofA x3227 | $9,120 |
| 44 | 8/22/17 | BofA x3227 | $5,860 |
| 45 | 8/22/17 | BofA x3191 | $5,075 |

Overt Act No. 46:   On August 3, 2017, at a JPMorgan Chase Bank ("Chase") branch on Henderson Road in Columbus, Ohio, Co-conspirator #3 deposited $7,275 in cash drug proceeds into Chase account x2962, which was controlled by defendant BOLL.

Overt Act No. 47:   On August 3, 2017, at a Chase branch on Sawmill Road in Columbus, Ohio, Co-conspirator #3 deposited $4,725 in cash drug proceeds into Chase account x2962, which was controlled by defendant BOLL.

Overt Act No. 48:   On August 11, 2017, at a Chase branch in Hilliard, Ohio, Co-conspirator #3 deposited $6,740 in cash drug proceeds into Chase account x2962, which was controlled by defendant BOLL.

Overt Act No. 49:   On September 3, 2017, in a vehicle in Hilliard, Ohio, Co-conspirator #3 possessed approximately $3,649 cash and approximately 2.5 kilograms of marijuana.

Overt Act No. 50:   On September 29, 2017, Co-conspirator #1, in Costa Mesa, California, mailed a package containing approximately 15 pounds of marijuana to Cincinnati, Ohio for further distributor.

Overt Act No. 51:   On September 11, 2018, using coded language in a text message, defendant BOLL told Co-conspirator #1 that he would deliver cash to Co-conspirator #1 later that day.

Overt Act No. 52:   On September 12, 2018, using coded language in a text message, defendant BOLL told Co-conspirator #1 to meet him in Costa Mesa, California so that he could deliver cash to Co-conspirator #1.

Overt Act No. 53:   On October 5, 2018, using coded language in a text message, defendant BOLL told Co-conspirator #1 that a third party had cash for Co-conspirator #1.

6

1    Overt Act No. 54:   On January 4, 2019, in a text message, Co-
2    conspirator #1 sent defendant GOLDBERG a receipt of a deposit, made
3    in Reading, Pennsylvania, of $4,700 in cash drug proceeds into Wells
4    Fargo account x3902, which was controlled by defendant GOLDBERG.

5    Overt Act No. 55:   On January 4, 2019, using coded language in
6    a text message, defendant GOLDBERG told Co-conspirator #1 that Co-
7    conspirator #1 could pick up cash from defendant GOLDBERG's office
8    anytime that day.

9    Overt Act No. 56:   On January 6, 2019, using coded language in
10   a text message, Co-conspirator #1 told defendant GOLDBERG told that
11   Co-conspirator #1 was making deposits into accounts controlled by
12   defendant GOLDBERG.

13   Overt Act No. 57:   On January 10, 2019, using coded language in
14   a text message, defendant GOLDBERG told Co-conspirator #1 that he had
15   cash for Co-conspirator #1.

16   Overt Act No. 58:   On January 10, 2019, in a text message, Co-
17   conspirator #1 sent defendant GOLDBERG a receipt of the deposit of
18   six checks totaling $5,989 into Wells Fargo account x3902, controlled
19   by defendant GOLDBERG.

20   Overt Act No. 59:   On January 10, 2019, in a text message, Co-
21   conspirator #1 sent defendant GOLDBERG a receipt of the deposit of
22   six checks totaling $5,996 into Wells Fargo account x8846, controlled
23   by defendant GOLDBERG.

24   Overt Act No. 60:   On January 16, 2019, using coded language in
25   a text message, defendant GOLDBERG told Co-conspirator #1 that he had
26   been storing up cash to deliver to Co-conspirator #1.

27   Overt Act No. 61:   On January 23, 2019, using coded language in
28   text messages, defendant GOLDBERG sent to Co-conspirator #1 the

account numbers for Wells Fargo account x6937, held in the name of Ocean View Accounting, and Wells Fargo account x3668, held in the name of Zedek Capital, Inc., both of which were controlled by defendant GOLDBERG.

Overt Act No. 62:  On January 23, 2019, using coded language in a text message, defendant GOLDBERG sent to Co-conspirator #1 the account number for Wells Fargo account x0808, which was controlled by defendant GOLDBERG.

Overt Act No. 63:  On January 23, 2019, using coded language in a text message, defendant GOLDBERG told Co-conspirator #1 to deposit no more than $2,500 cash into the Wells Fargo account x0808.

Overt Act No. 64:  On January 24, 2019, in a text message, Co-conspirator #1 sent defendant GOLDBERG a receipt of the deposit of $4,000 in cash into Wells Fargo account x6937.

Overt Act No. 65:  On January 24, 2019, in a text message, Co-conspirator #1 sent defendant GOLDBERG a receipt of the deposit of $3,390 in cash into Wells Fargo account x3668.

Overt Act No. 66:  On January 24, 2019, using coded language in a text message, defendant GOLDBERG told Co-conspirator #1 that he would call when he was headed to his office, so that Co-conspirator #1 could pick up cash from defendant GOLDBERG's office.

Overt Act No. 67:  On January 30, 2019, in a text message, Co-conspirator #1 sent defendant GOLDBERG a receipt of the deposit, made in Bensalem, Pennsylvania, of $5,000 in cash into Wells Fargo account x3902.

Overt Act No. 68:  On January 30, 2019, using coded language in a text message, defendant GOLDBERG told Co-conspirator #1 that he would have cash for Co-conspirator #1 the next day.

Overt Act No. 69:   On January 31, 2019, using coded language in text messages, defendant GOLDBERG told Co-conspirator #1 to use a different bank account for deposits than what Co-conspirator #1 had used the day before.

Overt Act No. 70:   On January 31, 2019, using coded language in text messages, defendant GOLDBERG told Co-conspirator #1 that he saw the $7,900 deposit that Co-conspirator #1 had caused to be made into Wells Fargo account x8846.

Overt Act No. 71:   On January 31, 2019, using coded language in a text message, defendant GOLDBERG told Co-conspirator #1 that he was at his office, so Co-conspirator #1 could pick up cash.

Overt Act No. 72:   On February 3, 2019, using coded language in a text message, defendant GOLDBERG told Co-conspirator #1 that he had saved cash for Co-conspirator #1.

Overt Act No. 73:   On February 4, 2019, in Huntington Beach, California, Co-conspirator #1 possessed with the intent to distribute approximately 94 pounds of methamphetamine.

Overt Act No. 74:   On February 18, 2019, in a telephone call, defendant GOLDBERG told Co-conspirator #1, who was then working with law enforcement, that the best way to receive cash from the East Coast by the next day was to convert the cash to money orders and mail them overnight to the West Coast.

Overt Act No. 75:   On February 18, 2019, in a telephone call, defendant GOLDBERG told Co-conspirator #1 that $20,000 cash could be deposited into four bank accounts in increments of $8,000, $8,000, and $4,000.

COUNT TWO

[18 U.S.C. § 1957]

[DEFENDANT BOLL]

On or about April 14, 2017, in Orange County, within the Central District of California, defendant RANDALL BOLL, knowing that the funds involved represented the proceeds of some form of unlawful activity, conducted, and willfully caused others to conduct, a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, a $70,000 transfer from Wells Fargo Bank account x9334 to JPMorgan Chase Bank account x7122, which property, in fact, was derived from specified unlawful activity, namely, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT THREE

[18 U.S.C. § 1957]

[DEFENDANT GOLDBERG]

On or about May 30, 2017, in Los Angeles County, within the Central District of California, defendant JOHN GOLDBERG, knowing that the funds involved represented the proceeds of some form of unlawful activity, conducted, and willfully caused others to conduct, a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, an $18,735.52 transfer from Bank of America account x7225 to Chase Credit Cards, which property, in fact, was derived from specified unlawful activity, namely, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT FOUR

[18 U.S.C. § 1957]

[DEFENDANT GOLDBERG]

On or about May 30, 2017, in Los Angeles County, within the Central District of California, defendant JOHN GOLDBERG, knowing that the funds involved represented the proceeds of some form of unlawful activity, conducted, and willfully caused others to conduct, a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the issuance of a $25,000 check from Bank of America account x7225, which property, in fact, was derived from specified unlawful activity, namely, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

                              COUNT FIVE

                         [18 U.S.C. § 371]

                         [ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

     Beginning in or about January 2017, and continuing to in or
about February 2019, in Orange County, within the Central District of
California, and elsewhere, defendants RANDALL BOLL and JOHN GOLDBERG
and others known and unknown to the Grand Jury, conspired and agreed
with each other to knowingly and intentionally commit the following
offenses:

     1.   Causing or attempting to cause a domestic financial
institution to fail to file a report required under Title 31, United
States Code, Sections 5313(a) or 5325 or any regulation prescribed
under any those sections, in violation of Title 31, United States
Code, Section 5324(a)(1); and

     2.   Structuring and assisting in structuring financial
transactions affecting interstate and foreign commerce, for the
purpose of evading the reporting requirements of Title 31, United
States Code, Section 5313(a), in violation of Title 31, United States
Code, Section 5324(a)(3).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
     ACCOMPLISHED

     The objects of the conspiracy were to be accomplished, in
substance, as follows:

     1-8.   The Grand Jury re-alleges and incorporates by reference
paragraphs 1 through 8 of Section B of Count One of this Indictment
here.

                                  13

C.   <u>OVERT ACTS</u>

On or about the following dates, in furtherance of the conspiracy, and to accomplish the objects of the conspiracy, defendants BOLL and GOLDBERG, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1-75. The Grand Jury realleges and incorporates by reference Overt Acts 1 through 75 of Count One of this Indictment here.

COUNT SIX

[18 U.S.C. §§ 1960(a), (b)(1)(A), (b)(1)(B)]

[DEFENDANT GOLDBERG]

Beginning in or about February 2016, and continuing through in or about February 2019, in Orange County, within the Central District of California, and elsewhere, defendant JOHN GOLDBERG knowingly conducted, controlled, managed, supervised, directed, and owned all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, that: (a) was operated without an appropriate money transmitting license in California, where such unlicensed operation was punishable as a felony under California law; and (b) failed to comply with the money transmitting business registration requirements under Title 31, United States Code, Section 5330, and the regulations prescribed under that section.

COUNT SEVEN

[18 U.S.C. §§ 1960(a), (b)(1)(A), (b)(1)(B)]

[DEFENDANT BOLL]

Beginning in or about February 2016, and continuing through in or about February 2019, in Orange County, within the Central District of California, and elsewhere, defendant RANDALL BOLL knowingly conducted, controlled, managed, supervised, directed, and owned all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, that: (a) was operated without an appropriate money transmitting license in California, where such unlicensed operation was punishable as a felony under California law; and (b) failed to comply with the money transmitting business registration requirements under Title 31, United States Code, Section 5330, and the regulations prescribed under that section.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(1)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of any of the offenses set forth in Counts One, Two, Three, Four, Six, and Seven of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses, including but not limited to:

(i)   $383,960.00 in U.S. Currency, seized by California Highway Patrol ("CHP") officers on November 9, 2020, during a vehicle search of Ian Silva ("Silva");

(ii)  $218,937.33 in funds seized from Bank of America account number ending in 5501 on or about February 8, 2021, held in the name of Ocean View Accounting, Inc.;

(iii) $129,437.94 in funds seized from Bank of America account number ending in 9165 on or about February 8, 2021, held in the name of Long Beach Auto Detail;

(iv)  $8,056.42 in funds seized from Bank of America account number ending in 5501 on or about March 9, 2021, held in the name of Ocean View Accounting, Inc.; and

(v)   $234,375.00 in funds seized from Bank of America account number ending in 9165 on or about March 9, 2021, held in the name of Long Beach Auto Detail.

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been placed beyond the jurisdiction of the court; (e) has been substantially diminished in value; or (f) has been commingled with other property that cannot be divided without difficulty.

1      FORFEITURE ALLEGATION TWO

2      [31 U.S.C. § 5317(c)(1)]

3      1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 31,

6   United States Code, Section 5317(c)(1), in the event of any

7   defendant's conviction of the offenses set forth in Count Five of

8   this Indictment.

9      2.   Any defendant so convicted shall forfeit to the United

10  States of America the following:

11      (a)   all right, title, and interest in any and all

12  property, real or personal, constituting, or derived from, any

13  proceeds traceable to the offenses, including but not limited to:

14      (i)   $383,960.00 in U.S. Currency, seized by

15  California Highway Patrol ("CHP") officers on November 9, 2020,

16  during a vehicle search of Ian Silva ("Silva");

17      (ii) $218,937.33 in funds seized from Bank of America

18  account number ending in 5501 on or about February 8, 2021, held in

19  the name of Ocean View Accounting, Inc.;

20      (iii) $129,437.94 in funds seized from Bank of America

21  account number ending in 9165 on or about February 8, 2021, held in

22  the name of Long Beach Auto Detail;

23      (iv) $8,056.42 in funds seized from Bank of America

24  account number ending in 5501 on or about March 9, 2021, held in the

25  name of Ocean View Accounting, Inc.; and

26      (v)   $234,375.00 in funds seized from Bank of America

27  account number ending in 9165 on or about March 9, 2021, held in the

28  name of Long Beach Auto Detail.

1          (b)   To the extent such property is not available for

2    forfeiture, a sum of money equal to the total value of the property

3    described in subparagraph (a).

4         3.    Pursuant to Title 21, United States Code, Section 853(p),

5    as incorporated by Title 28, United States Code, Section 2461(c), any

6    defendant so convicted shall forfeit substitute property, up to the

7    value of the property described in the preceding paragraph if, as the

8    result of any act or omission of said defendant, the property

9    described in the preceding paragraph or any portion thereof (a)

10   cannot be located upon the exercise of due diligence; (b) has been

11   transferred, sold to, or deposited with a third party; (c) has been

12   //

13   //

14   //

placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with

other property that cannot be divided without difficulty.

A TRUE BILL

_____
Foreperson

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

ROSALIND WANG
Assistant United States Attorney
Santa Ana Branch Office